**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**
**(BATON ROUGE)**

**DEMOND COOK**                                                    **CIVIL ACTION**

**VERSUS**                                                              **NO.  14-48**

**N. BURL CAIN, WARDEN**                                    **SECTION "JTM" (JW)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the submissions to date, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that (1) the petitioner's Motion to Stay (Record Doc. No. 3) be **DENIED**, and (2) the petition itself be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.      FACTUAL BACKGROUND

The petitioner, Demond Cook, is a convicted inmate currently incarcerated in the

Louisiana State Penitentiary in Angola, Louisiana.[2]   Cook was charged by bill of

information in East Baton Rouge Parish with two counts of armed robbery, two counts

of second degree kidnapping and one count of aggravated kidnapping.[3]  The aggravated

kidnapping charge was eventually dismissed by the State.[4]  The Louisiana First Circuit

Court of Appeal summarized the facts of the case as determined at trial:

> On November 26, 2008, as Margaret Sibley and Yolanda Brooks were
> preparing for closing at the Family Dollar store on Florida Boulevard, Brooks
> walked outside to return a shopping cart to its designated area. As she exited
> the store, a black male wearing a black hooded sweatshirt, blue jeans, black
> tennis shoes, a blue bandana covering the lower portion of his face, and a pair
> of black gloves, approached. The man pointed a handgun directly at Brooks's
> face and forced her back into the store. Frightened, Brooks screamed. Sibley,
> the store manager, who had been counting money in her cash drawer,
> immediately looked toward the door and observed the gunman holding Brooks
> at gunpoint. The gunman demanded money. He continued to hold Brooks, who
> was obviously pregnant, at gunpoint (including sometimes pointing the gun
> directly toward her stomach), while Sibley retrieved the money from the cash
> register and store safe. After receiving the money, the gunman instructed
> Sibley to get her keys. Sibley complied. The gunman forced the two women
> into Sibley's vehicle and told Sibley where to drive. The gunman exited the
> vehicle on Madison Avenue in Baton Rouge. Sibley immediately contacted the
> police.

---

[2]Rec. Doc. No. 1.

[3]Rec. Doc. No. 1; State v. Cook, No. 2011-KA-0148, 2011 WL 4572784, at *1 (La. App. 1st Cir. Sep. 14, 2011).

[4]Cook, 2011 WL 4572784, at *1.

The second incident occurred near closing time on December 3, 2008, at Money Mart, a check-cashing establishment on Airline Highway in Baton Rouge.  Brent Beling, an employee with Dollar Financial Group, a Phoenix, Arizona-based company (doing business locally as "Money Mart") was walking to his car after conducting an audit at the Money Mart store when he was approached by a black male with a handgun. The gunman was wearing a dark sweatshirt with a hood covering his head, a dark pair of slacks, and a blue bandana partially covering his face. The gunman pointed the gun at Beling and told him, "[g]ive me what you have."  Beling gave the gunman his briefcase. The gunman then grabbed Beling by the collar and told him, "[w]e're going to go back in there." He then forced Beling back into the store's lobby.

The lobby of the Money Mart store was separated from the remaining area of the store by a wall with a glass window and a locked door. From the area behind the glass window, store clerk Shondrika Mayo observed the gunman holding Beling at gunpoint. The gunman demanded that Beling open the door leading to the adjoining business area of the store. Beling told the gunman he did not have keys to open the door. The gunman then yelled at Mayo, through the window, demanding that she open the door and threatening to shoot Beling if Mayo did not open the door. Having been trained to never open the door in this type of situation, Mayo refused. Instead, Mayo went into the back area of the store where the store manager, Johanna Graham, was located and advised that there was a robbery in progress. Graham called 911.

The gunman again demanded that Beling open the door. Beling emptied his pockets, gave the gunman the keys to the rental car he was driving, and assured him that those were the only keys in his possession. The gunman grabbed the keys and attempted to exit the store.  However, the exit door was now locked. The gunman forcibly opened the door and fled with Beling's rental car keys and briefcase.

Approximately two or three minutes after the robbery call was made, Corporal James Cutrer, of the Baton Rouge City Police Department, arrived in the area near the Money Mart store to investigate the robbery complaint. Corporal Cutrer observed a black male, wearing black pants and a white shirt walking in a vacant lot near Money Mart. When Corporal Cutrer illuminated the area with his spotlight, the man, subsequently identified as the defendant, started running.  He was also clutching his waist as he ran.  Corporal Cutrer followed in his vehicle, but eventually lost sight as the defendant jumped a fence.  Corporal Cutrer drove to a nearby area and exited his vehicle.  He again observed the defendant running. Despite verbal commands to stop, the defendant continued to run. Corporal Cutrer continued to pursue the defendant on foot.

The defendant was eventually found hiding under a vehicle at a residence in the area. A blue bandana was also found under the vehicle. The keys to Beling's rental vehicle were recovered from the pocket of the pants the defendant was wearing. Approximately five to ten feet from the vehicle, a black handgun was found behind a tire. A black backpack was later found in the vacant lot where the defendant was initially spotted by Corporal Cutrer. The contents of the backpack included a black hooded sweatshirt, a stocking skull cap, two screwdrivers, a chisel, and a pair of gloves. Beling's computer and briefcase were also found in the area through which the officers believed the defendant ran.

Beling and Mayo were separately transported to the scene where the defendant was being detained. Both individuals positively identified the defendant as the gunman.

Later, when Detective Carl Mayo, of the Baton Rouge Police Department, learned of the details of the Money Mart robbery, he compiled a six-person photo lineup with the defendant's picture and presented it to Brooks and Sibley for possible identification in connection with the Family Dollar robbery, which had occurred approximately one week earlier. Brooks identified the defendant as the individual who committed the robbery at Family Dollar. Sibley could not identify the defendant with absolute certainty. She chose the defendant's photograph and the photograph of one other individual in the lineup as having eyes like the gunman. However, Brooks stated she was absolutely certain in her identification of the defendant. She also identified the defendant in open court as the person who held her at gunpoint inside the Family Dollar store.

State v. Cook, 90 So.3d 542 (La. App. 1st Cir. 2011) (Table); State v. Cook, No. 2011-KA-0148, 2011 WL 4572784, at *1-*3 (La. App. 1st Cir. Sep. 14, 2011).

After waiving his right to jury trial, on September 9, 2010, Cook was tried before a judge and found guilty as charged of two counts of armed robbery and two counts of

second degree kidnapping.[5]   He was eventually sentenced as a fourth felony offender to

serve concurrent sentences of life in prison at hard labor on each count.

On direct appeal, his appointed counsel argued that the state trial court erred in

permitting Cook to represent himself without first advising him of the disadvantages of

self-representation and allowing him to enter a guilty plea to the multiple offender bill

without first arraigning him or advising him of his rights.[6]   The Louisiana First Circuit

Court of Appeal affirmed the convictions, finding no merit in the first claim. However,

the appellate court found that the second claim had merit and vacated Cook's habitual

offender adjudication and sentence.  The court remanded the matter to the trial court for

re-sentencing.

On March 23, 2012, on review of the State's related writ application, the Louisiana

Supreme Court reversed the appellate court on the sentencing issue and reinstated Cook's

multiple offender sentence to life imprisonment.[7]

---

[5]Rec. Doc. No. 1; State v. Cook, No. 2011-KA-0148, 2011 WL 4572784, at *1 (La. App. 1st Cir. Sep. 14, 2011).

[6]Cook, 2011 WL 4572784, at *1.

[7]State v. Cook, 82 So.3d 1239, 1240 (La. 2012); State v. Cook, 85 So.3d 89 (La. 2012) (denying the separate writ application filed by Cook without stated reasons).

## II.     FEDERAL HABEAS PETITION

In his petition for federal habeas corpus relief, Cook has asserted nine (9) challenges to his conviction:[8] (1) The State withheld favorable evidence which has been newly discovered by petitioner. (2) The State relied on a suggestive identification process. (3) Prosecutorial misconduct occurred in the presentation of false testimony from witnesses Beling and Mayo. (4) Prosecutorial misconduct occurred in the presentation of false testimony by Detective Stubbs. (5) There was insufficient evidence to support the conviction for the robbery of Beling. (6) The defense was not provided adequate time to view the in-dash DVD recording. (7) Evidence was illegally seized during an investigatory stop. (8) Evidence was illegally seized in a suggestive identification. (9) His pockets were illegally searched beyond what is allowed on an investigatory stop.

## III.    MOTION FOR STAY OF PROCEEDINGS

Cook's petition was accompanied by a separate motion to stay these proceedings to allow him to fully exhaust available state court remedies related to all nine (9) of his asserted claims.[9]  Cook contends that the claims presented in his federal habeas petition

---

[8]Rec. Doc. No. 1, pp. 10-11.

[9]Rec. Doc. No. 3.

were not raised by his appointed counsel on direct appeal and that he has been prejudiced as a result.

In Pliler v. Ford, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" for habeas relief containing both exhausted and unexhausted claims. Id. The Pliler Court reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion. Id., at 233. The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. Id.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petitioner. Rhines v. Weber, 544 U.S. 269, 278 (2005). The Rhines Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust. Id., at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." Id.

In this case, Cook has not filed a mixed petition. He concedes that all nine (9) claims now raised have not been exhausted and were not asserted in his direct appeal.

7

This distinguishes his petition from the type of mixed petition addressed in <u>Pliler</u> and <u>Rhines</u> because there are <u>no</u> exhausted claims that would remain if he voluntarily dismissed the <u>unexhausted</u> claims, leaving return to the state courts for full exhaustion as the only remaining option under <u>Pliler</u> and <u>Rhines</u>.

In addition, Cook has not presented any good cause for this court to enter a stay while he attempts to exhaust the new claims, which he could easily have done through an application for post-conviction relief and related writ applications before filing his federal petition.

Federal doctrine requires that Cook give the state courts the first and full opportunity to consider the new claims and any new evidence he claims to have.  <u>Cullen v. Pinholster</u>, __ U.S. __, 131 S. Ct. 1388,  1401 (2011).  A stay to allow completion of exhaustion must be limited to instances in which good cause is shown for the failure fully to exhaust, <u>Rhines</u>, 544 U.S. at 278, and this is not such a case.  Cook has failed to show any good cause or any sound basis to issue a stay in this case.  His motion for a stay of proceedings should be denied.

IV.    <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[10] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

applies to Cook's petition, which, for reasons discussed below, is deemed filed in a

federal court on January 17, 2014.[11]

The threshold questions in habeas review under the amended statute are whether

the petition is timely and whether the claims raised by the petitioner were adjudicated on

the merits in state court; i.e., the petitioner must have exhausted state court remedies and

must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has not yet been ordered to file a response in this case, because, as noted

above, Cook concedes in his pleadings that he has not exhausted his claims in the

---

[10]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[11]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Cook's petition was filed by the clerk of court on January 17, 2014, when it was received.  The official stamp appearing on Cook's cover letter indicates that the pleadings were received from Cook by prison officials on January 17, 2014 and e-mailed to the court for filing that same day.

Louisiana Supreme Court. I find sua sponte that Cook's petition should be dismissed without prejudice for failure to exhaust state court remedies. Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of failure to exhaust state court remedies and that petitioner must submit any evidence or argument concerning exhaustion as part of any objections he may file to this report and recommendation**. Kurtzemann v. Quarterman, 306 F. App'x 205 (5th Cir. 2009) (district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given) (citing Day v. McDonough, 547 U.S. 198, 209-10 (2006) (addressing limitations) and Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)).

V.      EXHAUSTION OF STATE COURT REMEDIES

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the <u>highest</u> state court." <u>Id</u>. (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>accord</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 177-79 (2001).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." <u>Whitehead</u>, 157 F.3d at 387 (citing <u>Picard</u>, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents <u>new legal theories</u> or <u>new factual claims</u> in his federal application." (emphasis added) <u>Id.</u> (citing <u>Nobles</u>, 127 F.3d at 420). It is not enough for a petitioner to raise the claims in the lower state courts, if they were not also specifically presented to the Louisiana Supreme Court. <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

Thus, to have exhausted his claims in state court, Cook must fairly present the same claims and legal theories he urges in this federal court to the state courts through

to the Louisiana Supreme Court in a procedurally proper manner and have given that court an opportunity to address those claims.  Cook concedes he has <u>not</u> yet done so.

The record discloses no good cause for Cook's failure to exhaust these claims, and this court can find none.  <u>See</u> <u>Rhines</u>, 544 U.S. at 278.  Having shown no good cause for his failure to exhaust, this petition should be dismissed without prejudice to allow Cook to exhaust available state court remedies.  <u>Pliler</u>, 542 U.S. at 233 (quoting <u>Rose</u>, 455 U.S. at 510); <u>Whitehead</u>, 157 F.3d at 387.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is **RECOMMENDED** that Cook's Motion For Stay of Proceedings (Record Doc. No. 3) be **DENIED**.

It is further **RECOMMENDED** that Cook's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[12]

            New Orleans, Louisiana, this _____19th_____ day of February, 2014.


                    JOSEPH C. WILKINSON, JR.
               UNITED STATES MAGISTRATE JUDGE

---

[12]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.